## BROWN v. ARNOLD.

(Circuit Court of Appeals, Eighth Circuit. July 18, 1904.)

No. 2,049.

1. ATTORNEYS AT LAW—AUTHORITY PRESUMED.

The assumption by an attorney at law of authority within the scope of the ordinary power of a practicing lawyer to act for a party to an action or suit is presumptive proof of actual authority to so act. The power assumed by an attorney at law in the conduct of an action is valid until disproved, not void until proved.

2. SAME—AUTHORITY AFTER JUDGMENT—GENERAL RULE—EXCEPTIONS.

While the general rule is said to be that the authority conferred upon a lawyer by his retainer in an action or suit ceases when the judgment or decree is rendered, there are many exceptions to this rule, and in the actual practice of the law it is frequently disregarded. Some of the established exceptions are that after judgment or decree the authority of the attorney for the prevailing party to collect or enforce it, his authority to receipt for its proceeds and to discharge it, his authority to admit service of a citation to review it, and his authority to oppose any steps that may be taken within a reasonable time to reverse it, continue.

3. SAME—AUTHORITY TO STIPULATE AFTER JUDGMENT.

The retainer of an attorney at law to conduct an action confers upon him authority to stipulate with opposing counsel after the rendition of judgment in favor of his client, and after the expiration of the term of court, but within the time for procuring a writ of error, that the case shall abide the final decision of another action which involves the same question, and is conducted by the same attorneys.

4. EQUITY—ADEQUATE REMEDY AT LAW.

The remedy at law whch prohibits relief in equity must be "as practical and efficient to the ends of justice and its prompt administration as the remedy in equity." An action for damages for the breach of a stipulation that an action at law which has passed to judgment shall abide the final decision of another action is not as practical and efficient to attain the ends of justice as a suit in equity for specific performance of the contract, where the final decision of the other action requires a reversal of the judgment. The action for damages does not furnish a remedy so adequate that it precludes relief in equity.

5. LACHES—NOT ORDINARILY APPLICABLE WITHIN LIMITATION OF ANALOGOUS ACTION AT LAW.

Laches is of the nature of estoppel. In the absence of extraordinary circumstances, such as many innocent purchasers, radical changes in condition or value, or loss of evidence, it is inapplicable to suits in equity within the time limited for the commencement of analogous actions at law.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Western District of Missouri.

For opinion below, see 127 Fed. 387.

This appeal challenges a decree which sustained a demurrer and dismissed a bill exhibited by Edwin F. Brown, receiver of the First National Bank of Se-

¶ 2. See Attorney and Client, vol. 5, Cent. Dig. §§ 129, 130, 176, 204.

dalia, against John S. Arnold, for the purpose of enforcing specific performance of a stipulation made between Parry L. Deweese, the former receiver of this bank, and James T. Montgomery and William M. Williams, the attorneys for Arnold, to the effect that the case of Deweese, receiver, against Arnold should abide the result of the final decision of the case of Deweese, receiver, against Martha E. Smith and Sarah E. Cotton. The bill set forth these facts: In 1889 Martha E. Smith and Sarah E. Cotton were the owners of 100 shares of the capital stock of the First National Bank of Sedalia, and the defendant, Arnold, was the owner of 20 shares of that stock. Deweese, the receiver of the bank, brought separate actions against Smith and Cotton, Arnold, and about 35 other stockholders of that bank to recover a second assessment upon their stock, which had been levied by the Comptroller of the Currency. Montgomery and Williams had been retained by all these stockholders, and had made the same answer to the petition in each of the cases. The receiver made a motion for judgment in each of the cases, that motion was denied, the receiver declined to plead farther, and the court rendered a judgment that the plaintiff should take nothing by his action, and that the defendant in each case should recover his costs of the plaintiff. These judgments were rendered in 1899, and after the term of court at which they were entered had expired the attorney for Deweese and Montgomery and Williams as attorneys and solicitors for each of the defendants in all the cases made a written stipulation that the receiver should sue out a writ of error from the judgment rendered in the case against Smith and Cotton, and that all the other cases against the other stockholders in which the judgments had been rendered in favor of the defendants should abide the result of the final decision in the case of Deweese, receiver, against Smith and Cotton. Thereupon such a writ of error was procured, and that judgment was reviewed and reversed by the Circuit Court of Appeals (106 Fed. 438, 45 C. C. A. 408), and its judgment was affirmed by the Supreme Court (23 Sup. Ct. 845, 47 L. Ed. 344). This affirmance was made on March 17, 1903. The attorney for the receiver lost the stipulation, and in March, 1903, he set forth the fact that the stipulation was made and had been lost, and moved the Circuit Court to redocket the case against Arnold, and allow it to stand according to the terms of the stipulation until the final decision in Deweese against Smith and Cotton, and this motion was denied. On August 15, 1903, the receiver exhibited the bill here in question, wherein he prays upon the facts which have been recited that the defendant be compelled to specifically perform the stipulation to the effect that the case against him should abide the final decision of the case against Smith and Cotton.

Wm. S. Shirk, for appellant.

P. H. Sangree, Henry Lamm, John Montgomery, Jr., and Lee Montgomery, for appellee.

Before SANBORN and VAN DEVANTER, Circuit Judges, and AMIDON, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Specific performance of the stipulation between the receiver and the appellee that the latter's case should abide the final decision of the action between the receiver and Smith and Cotton was denied by the Circuit Court upon three grounds: (1) Because the attorneys for Arnold had no authority to make the agreement evidenced by the stipulation on his behalf; (2) because the receiver had an adequate remedy at law; and (3) because his attorney had been guilty of laches. The case of Arnold, the case of Smith and Cotton, and the cases of 35 other stockholders whom the receiver had sued involved the same issue of law, which had been framed and tried by the same attorneys. Judgments had been entered in these cases in favor of the defendants. The term of court at which

they were rendered had expired. Several months yet remained within which the receiver might lawfully procure writs of error to reverse these judgments. Then it was that the stipulation which lies at the basis of this suit was made and signed by the attorneys for all the parties to the litigation. It was a rational and salutary agreement. It saved to the litigants the expenses of the prosecution of 36 writs of error, and if it is performed it will produce without that unnecessary expense the same result that a review of all the cases and that additional expense would have effected. Obviously the performance of the agreement ought to be enforced unless some rule of law or of equity presents an insuperable obstacle.

It is said that the attorneys for Arnold were without authority to make the stipulation, because judgment had been rendered in his favor, and the term of court at which it was entered had expired; that when the judgment was recorded and the term closed the power of Arnold's attorneys to act for him, derived from their original retainer, ceased, and a new warrant of attorney was indispensable to their authority to sign the stipulation. There are two answers to this contention. In the first place, if a new warrant of attorney was requisite after the judgment was rendered, the legal presumption is that the attorneys had obtained it. The bill contains an averment that they agreed to and signed the stipulation as the solicitor and counsel of Arnold. The presumption is that they did not represent themselves to be that which they were not. The stipulation was within the scope of the general power of attorneys who are conducting several cases of a single class which involve the same issue. Stone v. Bank of Commerce, 174 U. S. 412, 422, 19 Sup. Ct. 747, 43 L. Ed. 1028; Scarritt Furniture Co. v. Moser, 48 Mo. App. 543, 548; Ohlquest v. Farwell, 71 Iowa, 231, 32 N. W. 277; Eidam v. Finnegan, 48 Minn. 53, 50 N. W. 933, 16 L. R. A. 507. They were officers of the court. Their signatures to the stipulation constituted prima facie evidence of their authority to execute it. The assumption by an attorney at law of authority within the scope of the general power of a practicing lawyer to act for a party to an action or suit is always presumptive proof of his actual authority to do so. The authority assumed by an attorney at law to act for a party in court is valid until disproved, not void until proved. The burden was upon the defendant to establish by answer and evidence that his attorneys were without the authority which they assumed. In the second place, while the general rule is said to be that the authority derived by an attorney at law from a general retainer to conduct a litigation on behalf of his client ceases when the judgment is rendered, there are many exceptions to this rule, and in the actual practice of the law it is at least doubtful whether it is not more honored in the breach than in the observance. Among the acknowledged exceptions to it are the authority of the attorney for the party who prevails in the judgment to collect it, his authority to receipt for its proceeds and to discharge it, his authority to admit service of a citation issued upon a writ of error or appeal to review it, and his authority to oppose any steps that may be taken within a reasonable time by the defeated party to reverse it. Berthold v.

Fox, 21 Minn. 51, 53; Grames v. Hawley (C. C.) 50 Fed. 319, 321; Lusk v. Hastings, 1 Hill, 659, 662; Graves v. Graham (City Ct. N. Y.) 43 N. Y. Supp. 508; Beach v. Beach (S. D.) 43 N. W. 701; Barfield v. McCombs (Ga.) 15 S. E. 666. The case at bar falls fairly within the exceptions. Arnold was the prevailing party in the judgment in the action against him. He secured a judgment against the receiver for his costs. Thereupon his attorneys had authority, by virtue of their general retainer, to collect the amount of this judgment, to accept service of a citation upon the issuance of a writ of error to review it, and to take any requisite steps to oppose the attempt of the defeated party, made within a reasonable time after the entry of the judgment, to reverse it. The attorneys of Arnold were also the attorneys of about 36 other defendants who had secured similar judgments. The receiver was about to apply for writs of error to reverse them. The 37 cases involved a single question. In order to prevent the reversal of the judgments, the attorneys for these 37 parties agreed with the attorney for the receiver that he should select one case and sue out but a single writ of error, and that all the other cases should abide the final decision of that in which the writ was to be issued. The receiver relied upon the agreement, and performed it. The attorneys for the defendant followed the test case through the Court of Appeals (106 Fed. 438, 45 C. C. A. 408) and the Supreme Court (23 Sup. Ct. 845, 47 L. Ed. 344), until the reversal of the judgment therein was finally affirmed. All the rights and interests of the defendant, Arnold, were completely protected by this course of proceeding. The question in his case was argued in the higher courts by the attorneys whom he had retained to try it for him in the court below, by the attorneys who had authority to accept, and who undoubtedly would have accepted, service of a citation in error, and who would have argued his case in the higher courts if they had not made the stipulation and a writ of error had been issued, as it certainly would have been, to review it. Their stipulation prevented the issue of that writ, protected all the rights of their client, saved him the unnecessary expenditure of money, and was as completely within the authority granted to them by their retainer as the acceptance of service of a citation or the resistance of a motion for a new trial. Our conclusion is that the retainer of an attorney at law to conduct an action confers upon him authority to stipulate with opposing counsel after the rendition of a judgment in favor of his client and after the close of the term of court at which it was rendered, but within the time for procuring a writ of error, that the case shall abide the final decision of another action which involves the same question and is conducted by the same attorneys.

It is next insisted that this suit in equity cannot be maintained because the complainant has an adequate remedy at law. He has no remedy at law in his original action, because the term at which the judgment was entered has long since expired, and the court which rendered it no longer has jurisdiction to vacate or modify it for the reasons which the complainant presents. City of Manning v. German Ins. Co., 46 C. C. A. 144, 147, 107 Fed. 52, 55, and cases

cited. His only remedy at law is an action for damages for the breach of the stipulation. That action, however, may involve the trial of the issue whether or not a judgment against the appellee, Arnold, pursuant to the stipulation, would have been collectible if rendered; for, if Arnold had no property liable to execution, the receiver's failure to recover a judgment against him would have inflicted no damages upon him. There is no such issue of fact or of law to be tried in this suit in equity. All the averments of the bill are admitted, and the receiver is entitled to a decree. His remedy at law by an action for damages is therefore not as prompt and efficient to attain the ends of justice as is this suit in equity. Moreover, it is not adequate. It will leave the judgment which the defendant has recovered in full force and of record, while a court of equity may enjoin its enforcement, and may require the defendant to discharge it. The remedy at law which precludes relief in equity must be "as practical and efficient to the ends of justice and its prompt administration as the remedy in equity." Boyce's Ex'rs v. Grundy, 3 Pet. 210, 215, 7 L. Ed. 655; Springfield Milling Co. v. Barnard & Leas Mfg. Co., 81 Fed. 261, 265, 26 C. C. A. 389, 393. The action for damages does not meet the test of an adequate remedy at law which precludes relief in equity.

The third reason assigned for the dismissal of the bill is that the receiver's attorney was guilty of laches, because he did not bring to the attention of the court the stipulation, its loss, and his motion to docket the case again at an earlier date. The stipulation was not made until November, 1899. The final decision in the case of Smith and Cotton was not rendered until November 17, 1902. Then for the first time a cause of action accrued upon the stipulation. The attorney for the receiver disclosed the execution and loss of the stipulation, and moved to redocket the action at law, and for leave to have it stand upon the docket to abide the final decision in the test case, as early as March, 1902. Laches is of the nature of estoppel. Courts apply it to suits in equity by analogy to the statute of limitations to protect innocent parties and to avoid inequitable results. There are no innocent parties who will suffer here by the enforcement of the plain agreement of the defendant, Arnold. No injury was inflicted upon him by the delay of the attorney for the receiver in making his motion, because the court was as completely without jurisdiction to grant it when the stipulation was made as it was when the motion was denied. The stipulation first became actionable on November 17, 1902. This suit was brought on August 15, 1903. The time limit by the statutes of Missouri for commencing the analogous action at law was five years. Rev. St. Mo. 1899, § 4273. In the absence of extraordinary circumstances, such as the destruction of muniments of title, the death or removal of parties, many innocent purchasers, radical changes in the condition or value of property or its speculative character, courts of equity never apply the doctrine of laches earlier than at the expiration of the time limited for the commencement of analogous actions at law. Kelley v. Boettcher, 85 Fed. 55, 62, 29 C. C. A. 14, 21. There were no such circumstances in the case in hand; and neither the receiver

nor his counsel have been guilty of any delay which precludes them from successfully seeking the equitable relief to which they are entitled.

The decree below is accordingly reversed, and the case is remanded to the Circuit Court, with instructions to overrule the demurrer, to permit the defendant, Arnold, to answer the bill in accordance with the provisions of the thirty-fourth rule in equity, in case he fails to answer to take the bill pro confesso, and to render a decree to the effect that the defendant, Arnold, his executors, administrators, and assigns, are perpetually enjoined from collecting or in any way enforcing the judgment he has obtained against the receiver; that he be directed to satisfy and discharge that judgment from the record; that the receiver recover from him $500, the amount of the second assessment upon his stock, with interest at 6 per cent. per annum from March 7, 1899, and costs; and that the receiver have execution to enforce the collection thereof; and, in case the defendant shall answer, to take proceedings not inconsistent with the views expressed in this opinion.