BEFORE THE THIRD DIVISION, NOVEMBER 16, 1964

No. 68890.—Caldwell Shipping Company *v.* United States, protest 60/31168 (Jacksonville (Tampa)).

DONLON, Judge: This litigation has to do with duty which was assessed by the collector at Jacksonville, Fla., on repairs that had been made abroad to the American vessel "Wang Dispatcher."

The official papers were not offered in evidence, nor was any testimony taken on trial in Jacksonville. The case was submitted upon a so-called "Petition for Remission," signed by Caldwell Shipping Company, the plaintiff herein, by its president, and by plaintiff's attorneys. This "petition" is not a verified instrument, nor was it offered into evidence. It is stamped "Received Port of Jacksonville Feb. 18, 1964, U.S. Customs Court, Edward J. Carey, Clerk, by M. J. Russo, Reporter."

The unsubstantiated facts recited in the "Petition for Remission," include the following:

North Atlantic Marine Co., Inc., was general agent and operator of the vessel "Wang Dispatcher," and in that capacity contacted plaintiff by telephone on April 10, 1959, engaging plaintiff's services in anticipation of the arrival of the vessel from Israel on April 12, 1959. In normal course of business, plaintiff filed Form 3171, which involved its bond dated July 9, 1958, in the amount of $10,000. On April 12, 1959, when Form 3171 was filed, plaintiff did not know what repairs, if any, had been made to the vessel outside the United States. When the vessel sailed into Jacksonville, the master, J. A. Niin, reported in his affidavit that repairs had been made, but that he did not know the extent thereof or the place where the repairs had been made. Attempts were made to obtain specific information from North Atlantic Marine Co., Inc., but these attempts were unsuccessful.

The deputy collector was informed of these attempts and of the lack of success. The "Wang Dispatcher" remained in Jacksonville for about a year, during which time plaintiff frequently notified the office of the deputy collector and suggested that the Government attach and seize the vessel in payment of duties. This was not done.

In order to forestall the deputy collector from proceeding against plaintiff's bond, plaintiff on January 28, 1964, paid the duty, amounting to $1,400.

Plaintiff asserts that it has received payment of only a portion of the expenses it incurred on behalf of North Atlantic Marine Co., Inc., and that there has been no consideration flowing from that company to plaintiff. It claims further that the amount of duty assessed was an arbitrary figure, having no basis in fact or law, and that it was oppressive, unwarranted and excessive. Therefore, plaintiff prays that said duty be remitted in whole or in part.

Attached to the declaration, as filed by the master, is the following red-ink notation:

C.F. 3415      Jacksonville, Fla 4/14/59

S. T. WANG DISPATCHER
Treated as a Vessel-Repair Entry
per B/L   7/11/60, copy attached:

|  |  |
|---|---|
|  | Sec. 466, T.A. |
|  | 50% $1400.00 |
| Repairs $2800.00 | Correct Duty   $1400.00 |
|  | Estimated Duty Paid   None |
|  | Increase   $1400.00 |

Attached is a letter from Caldwell Shipping Company, dated July 14, 1960, stating:

* * * Upon your insistence for a repair entry showing the cost of these repairs we can only give you our estimate which is $2,800.00.

Also attached is a copy of a letter from Chief, Division of Classification and Drawbacks, reciting certain facts, and stating:

* * * You anticipate holding the bond liable for the duty accruing although no vessel repair entry was made. It would appear proper to treat the incomplete statement of the master on customs Form 3415 as an entry, if necessary, and liquidate on the basis of an estimated cost of the repairs.

This procedure appears imperative as the holder of the preferred mortgage on the vessel has instituted foreclosure proceedings and consequently it is important to perfect the Government's lien by liquidating the entry before proceeding against the bond. Moreover, if circumstances render further action appropriate the case could be referred to the United States attorney for consideration of the advisability of filing an intervening libel against the vessel on behalf of the Government.

Section 466 of the Tariff Act of 1930, under which duty was assessed, provides as follows:

* * * The equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade, shall, on the first arrival of such vessel in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country; and if the owner or master of such vessel shall willfully and knowingly neglect or fail to report, make entry, and pay duties as herein required, such vessel, with her tackle, apparel, and furniture, shall be seized and forfeited. For the purposes of this section, compensation paid to members of the regular crew of such vessel in connection with the installation of any such equipments or any part thereof, or the making of repairs, in a foreign country, shall not be included in the cost of such equipment or part thereof, or of such repairs.

Plaintiff claims in its brief that the words "owner or master" in section 466, *supra*, do not include an agent and that plaintiff, as an agent, was never intended to be within the scope of this statute. It is further claimed that where the owner or master neglects to pay the duties, the Government is required to seize the vessel; and since it did not do so, it is estopped from claiming duties against the agent. It is also asserted that forms and/or bonds submitted between the parties cannot change the intent, meaning, or application of the statute.

The Government contends that the "Petition for Remission" does not establish any facts to overcome the presumption that the collector properly discharged his official duties in assessing duty; that plaintiff has not sustained its burden of proving that an error has been committed; and that this court has no equitable jurisdiction.

It is clear that plaintiff has not established the alleged facts by proper proof. The official papers were not offered or received in evidence and the "Petition for Remission" is at most a pleading or a self-serving declaration. It is not proof. *J. Benitez Cintes* v. *United States*, 18 CCPA 361, T.D. 44614; *R. C. Williams & Co., Inc.* v. *United States*, 26 CCPA 210, C.A.D. 19.

However, even if the facts recited had been proved, and they were not, plaintiff would not be entitled to relief. At the time the vessel arrived in Jacksonville, plaintiff acted as agent of the operator of the vessel and covered the vessel under its blanket bond for $10,000. (See Customs Regulations, section 4.14, providing that entry shall be made for equipment or repairs of vessels and that estimated duties shall be deposited, or a bond on customs Form 7567 or 7569 given, before the vessel shall be allowed clearance; and section 25.4(20) providing for "Blanket vessel, vehicle, or aircraft term bond, customs Form 7569, in the amount of $10,000 * * *.")

The master of the vessel filed an incomplete repair entry. Plaintiff was unable to get information necessary to complete the entry. However, plaintiff or its principal seems to have given the collector an estimate of the cost of repairs, namely, $2,800, and it is this estimate the collector used in assessing duty. Plaintiff filed a protest and eventually, in order to avoid action on its bond, paid the duty.

The statute provides that where the owner or master willfully and knowingly neglects to make entry and pay duties on repairs made abroad, the vessel shall be seized and forfeited. Plaintiff claims that the vessel should have been seized in the instant case. However, this procedure might not have been proper, since the master did in fact make an entry, although an incomplete one; and the duties were covered, first, by the bond of the agent and, later, by payment of duties by that agent.

The statute does not require an agent to pay the duties on repairs; but if the owner or master employs an agent, and the agent does pay the duties, his action, like other actions of an agent, is the action of the principal if it is within the scope of the agent's authority. *Yee Chong Lung & Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 382, T.D. 39191; *Bemis Bro. Bag Co.* v. *United States*, 59 Treas. Dec. 169, T.D. 44558 .

Although the authority of the agent here has not been delineated precisely, and we lack proofs, to represent a ship's operator at the port of entry often involves the expenditure of money; therefore, a request on the part of the principal to incur expenditure may be inferred, together with an implied promise to repay. 3 Corpus Juris Secundum, *Agency*, section 197.

Under the circumstances, the Government would have a right to rely on plaintiff's implied or apparent authority to pay the duty assessed and which plaintiff did, in fact, pay. Plaintiff's grievance is against its principal, and it may not claim relief from a third party (the Government) because of the principal's

failure to furnish information or to reimburse plaintiff for the amounts expended for the principal.

In *United States* v. *Maine Central Railway Co.*, 9 Ct. Cust. Appls. 192, T.D. 38015, a broker was authorized to make entries. Through error, he made a consumption entry for certain merchandise and paid the duties, instead of making an entry for transportation and exportation. It was held that the importer was not entitled to repayment of those duties, even though his agent failed to follow instructions. *A fortiori*, the agent here cannot recover from the Government, even if the agent proved that its principal did not act in good faith toward the agent, a fact (again let us say) that has not been proved.

The protest does not state a cause of action because, even if all the facts alleged had been proved, plaintiff could not recover from defendant.

Judgment will be entered dismissing the protest.